[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 2, 2005
THOMAS K. KAHN
CLERK

Nos. 01-17249, 01-17251, 01-17253,
01-17255, 01-17256, 01-17257
_____

Tax Court Nos. 1984-92, 22884-93, 21616-91
16421-90, 23743-92, 20211-91

CLAUDE M. BALLARD,
MARY B. BALLARD,

Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondents-Appellees.

_____

Appeals from a Decision of
the United States Tax Court

_____

**(November 2, 2005)**

**ON REMAND FROM THE SUPREME COURT
OF THE UNITED STATES**

Before HULL, FAY and GIBSON*, Circuit Judges.
_____
*Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by
designation.

PER CURIAM:

In this tax fraud case the Tax Court ruled that taxpayers fraudulently failed to declare and pay income tax on approximately $3,200,000. We affirmed. Ballard v. Comm'r of Internal Revenue, 321 F.3d 1037 (11th Cir.2003). The Supreme Court granted Certiorari and reversed. Ballard v. Comm'r of Internal Revenue, 125 S.Ct. 1270 (2005). Following the Supreme Court's guidance, we now remand the case to the Tax Court with the following instructions: (1) The "collaborative report and opinion" of the Tax Court is ordered stricken; (2) The original report of the special trial judge is ordered reinstated; (3) The Chief Judge of the Tax Court is instructed to assign this matter to a regular Tax Court Judge who had no involvement in the preparation of the aforementioned "collaborative report;" (4) The Tax Court shall proceed to review this matter in accordance with the dictates of the Supreme Court, and with the Tax Court's newly revised Rules 182 and 183, giving "due regard" to the credibility determinations of the special trial judge and presuming correct fact findings of the trial judge. This is a limited remand, and should either party seek appellate review following this new ruling by the Tax Court, such appeal should be assigned to this panel.[1]

---

[1] See Pettway v. Am. Cast Iron Pipe Co., 681 F.2d 1259, 1269 (11th Cir.2001)(panel retains jurisdiction to hear subsequent appeals of case following remand); see also Geisser v. United States, 627 F.2d 745, 748-9 (5th Cir.1980)(in order for same panel to retain jurisdiction, panel must be referred to explicitly)(binding precedent under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc)).

## I. Factual Background

The allegations of the Internal Revenue Service (IRS) set forth a complicated scheme of kickbacks to influence decisions of the Real Estate Department of Prudential Life Insurance Company of America (Prudential). According to these allegations, the principal players were Burton W. Kanter (Kanter), a well known Chicago tax attorney, Claude M. Ballard (Ballard), and Robert W. Lisle (Lisle), two senior executives with Prudential. The details of the alleged schemes are set forth in our earlier opinion and need not be repeated here. The gravamen of the allegations is that Kanter "sold" influence with Ballard and Lisle to gain financing for various projects through Prudential, charged fees for these "services," and split these monies with Ballard and Lisle through a group of legal entities. These allegations focus primarily on five arrangements made between Kanter and J.D. Weaver, Bruce Frey, William Schaffel, Kenneth Schnitzer, and John Eulich. It is alleged that these five individuals paid "kickbacks" to Kanter who in turn funneled a portion to Ballard and Lisle through a complex web of corporations, partnerships, and trusts.

## II. Procedural History

A.    <u>Public History</u>

As set forth in our earlier opinion, the record brought to our court showed the following:

3

Petitioners-Appellants received Notices of Deficiency from the IRS pertaining to years 1975 through 1982, 1984, and 1987 through 1989, alleging that they owed additional taxes. As to each deficiency asserted by the IRS, the Ballards filed petitions for redetermination in the Tax Court. Pursuant to I.R.C. § 7443A and Rules 180, 181 and 183, the Chief Judge of the Tax Court assigned the consolidated case to Special Trial Judge D. Irwin Couvillion for trial.

At the conclusion of the five-week trial during the summer of 1994, Special Trial Judge Couvillion, in accordance with Rule 183(b), prepared and submitted a written report containing his findings of facts and opinions to the Chief Judge for subsequent review by a Tax Court Judge. In accordance with Rule 183, none of the litigants received a copy of Special Trial Judge Couvillion's report at that time. Thereafter, pursuant to Rule 183(b), the Chief Judge assigned the case to Tax Court Judge H.A. Dawson, Jr. for his review and final disposition. On December 15, 1999, Judge Dawson issued the opinion of the Tax Court in which the Tax Court both approved of and adopted Special Trial Judge Couvillion's report (T.C. Memo 1999-407; see Investment Research Assoc., Inc. v. Commissioner, 78 T.C.M. (CCH) 951 (1999)), a copy of which was provided to the parties. On July 24, 2001, Judge Dawson entered the final order of the Tax Court against Petitioners-Appellants, assessing tax deficiencies of $1,318,648. Of that amount, $422,812 is penalties against Ballard pursuant to I.R.C. § 6653(b).

On April 20, 2000, prior to the Tax Court's final order of assessment, the Ballards, joined by the other petitioners, filed a motion requesting access to "all reports, draft opinions or similar documents, prepared and delivered to the [Tax] Court pursuant to Rule 183(b)," or, in the alternative, that the Tax Court either certify the issue for interlocutory appeal pursuant to Rule 193 or make the initial findings part of the record for subsequent appeal to the circuit court. On April 26, 2000, Judge Dawson issued an order denying the motion. In the order, Judge Dawson noted that "[he] gave due regard to the fact that Special Trial Judge Couvillion evaluated the credibility of witnesses . . . and treated the findings of fact recommended by the Special Trial Judge as being presumptively correct."[2] On May 26, 2000, the Ballards,

---

[2] Rule 183(c) provides in relevant part, "[d]ue regard shall be given to the circumstance that the Special Trial Judge had the opportunity to evaluate the credibility of witnesses, and the findings

along with the other petitioners, filed a second motion with the Tax Court. The second motion requested that Special Trial Judge Couvillion's original report or other documentation be placed under seal and made part of the record for subsequent appellate review. That motion was denied on May 30, 2000.

On August 22, 2000, the Ballards, once again joined by the other petitioners, filed a motion requesting that the Tax Court reconsider its denial of access to Special Trial Judge Couvillion's original report or, alternatively, that the Tax Court grant the petitioners a new trial. In support of this motion, an affidavit from Randall G. Dick ("Dick"), attorney for IRA and for Kanter, was filed. In the affidavit, Dick indicated that two unidentified Tax Court Judges approached him and stated that in the original report submitted to the Chief Judge in accordance with Rule 183(b), Special Trial Judge Couvillion concluded that payments made by "the Five" were not taxable to the individual petitioners and that the fraud penalty was not applicable. Furthermore, Dick indicated that the two unidentified Tax Court Judges expressed that "substantial sections of the opinion were not written by Judge Couvillion, and that those sections containing findings related to the credibility of witnesses and findings related to fraud were wholly contrary to the findings made by Judge Couvillion in his report." According to Dick, the two Tax Court Judges stated that the changes to Special Trial Judge Couvillion's findings relating to credibility and fraud were made by Judge Dawson. Finally, Dick indicated that he confirmed what he was told by the two unidentified Tax Court Judges with yet another unidentified Tax Court Judge. Apparently, the third unidentified Tax Court Judge confirmed that Special Trial Judge Couvillion's opinion had been "changed." On August 30, 2000, the Tax Court issued an order signed by Special Trial Judge Couvillion, Judge Dawson and the Chief Judge of the Tax Court denying the motion and confirming that, contrary to the contents of the affidavit, the underlying report adopted by the Tax Court is, in fact, Special Trial Judge Couvillion's report.

Subsequently, the Ballards petitioned this court for a writ of mandamus seeking an order directing the Tax Court to provide the

_____

of fact recommended by the Special Trial Judge shall be presumed to be correct."

Ballards with a copy of the original Special Trial Judge Couvillion report or, alternatively, seeking an order requiring that the Tax Court provide any changes made by Judge Dawson to the original Special Trial Judge Couvillion report. The petition was denied on October 23, 2000.

Ballard, 321 F.3d at 1040-41 (11th Cir.2003).

B.      Undisclosed History

We now know, based on new documents filed with this Court, that the following events occurred in the Tax Court:

1.      Judge Couvillion's original report initially recommended that Ballard was not liable for the deficiencies in tax asserted against him. Specifically, Judge Couvillion concluded that "there were no 'kickback schemes,' and none of the alleged 'kickback schemes' payments by 'The Five' represented unreported income of Kanter, Ballard, and Lisle. There was, therefore, no underpayment of tax." In fact, Judge Couvillion's original report did not consider the government's allegation of fraud "as even rising to the level of suspicion of fraud."

2.      After Judge Dawson was assigned to the case, he reviewed Judge Couvillion's original report and advised the Chief Judge that he disagreed with it. Approximately one week later, on or about August 27, 1998, then Chief Judge

6

Cohen advised Judge Dawson that she also disagreed with Judge Couvillion's original report.

3. A conference was scheduled between Chief Judge Cohen, Judge Dawson, and Judge Couvillion. It appears that shortly before this conference was to take place, Judge Couvillion was aware that both Chief Judge Cohen and Judge Dawson disagreed with his report.

4. On September 1, 1998, Judge Couvillion withdrew his original report.

5. Chief Judge Cohen assigned Judge Dawson and Judge Couvillion to write a "collaborative report." This "collaborative report" stood in stark contrast to Judge Couvillion's original report. In fact, the collaborative report now concluded that Ballard should be liable for the deficiencies in tax asserted against him.

6. On October 25, 1999, Judge Dawson adopted the "new collaborative report."

7. On November 4, 1999, Chief Judge Cohen adopted the "new collaborative report" with some minor modifications.

8. On December 15, 1999, Chief Judge Cohen formally assigned the case to Judge Dawson, and the "new collaborative report" was filed as the decision of the Tax Court.

**III. Discussion**

The Supreme Court has now made clear that the procedures outlined above run contrary to the rules of the Tax Court and completely disregard the deference due to the credibility determinations and fact findings of Special Trial Judge Couvillion. Although the Tax Court itself renders the final decision, Tax Court Rule 183[3] governs the proceedings in which a special trial judge hears a case. Specifically, Rule 183(b) requires that the special trial judge "submit a report, including findings of fact and opinion, to the Chief Judge, and the Chief Judge will assign the case to a judge or Division of the Court." Rule 183(c) requires the assigned Tax Court Judge to give "due regard" to the report because the special trial judge "had the opportunity to evaluate the credibility of the witnesses." Fact findings in the report "shall be presumed to be correct." Tax Ct. Rule 183(c). The Tax Court's final decision may either adopt, modify, or "reject in whole or in part" the special trial judge's report. Id.

As discussed by the Supreme Court, special trial judge reports were once made public and were included in the record on appeal. Disclosure of the original reports as submitted to the Chief Judge marked the practice of the Tax Court prior to a 1983 revision to the Tax Court Rules.[4] This revision deleted the requirement found in Tax

---

[3] The relevant provisions of Tax Court Rule 183 were previously found in Tax Court Rule 182, prior to the 1983 amendment. Moreover, Tax Court Rule 183 was recently amended on September 20, 2005. Unless otherwise stated, we cite the language of the rule as it was at the time of the Supreme Court's decision.

[4] The effective date of this rule revision was January 16, 1984.

Court Rule 182 that, upon submission of the report, "a copy... shall forthwith be served on each party." The revision also deleted a prior provision giving parties an opportunity to make exceptions to the report. As a result, the Tax Court significantly altered its practice regarding special trial judge recommendations.

Following the 1983 revision, the Tax Court began to withhold special trial judge reports from the public and to exclude these reports from the record on appeal. Tax Court Judges also refrained from stating whether they had "modified" or "rejected" reports in their decisions. Instead, decisions invariably stated that they agreed with and adopted the special trial judge's recommendations. See Ballard, 125 S.Ct. at 1275.[5] Thus, the Tax Court discontinued its practice of disclosing whether and how its final decision deviated from the special trial judge's original report. The Supreme Court has now concluded that this practice did not comply with Tax Court rules, and that "[t]he Tax Court, like all other decision making tribunals, is obligated to follow its own Rules." Id. at 1282. Furthermore, the Supreme Court stated that the Tax Court's practice of not disclosing the "original report, and of obscuring the Tax Court judge's mode of reviewing that report, impedes fully informed appellate review for the Tax Court's decision." Id. at 1283.

---

[5] This is apparently a stock statement used in opinions issued under post-revision Tax Court practices. See Ballard, 125 S.Ct. at 1275.

The Tax Court recently amended Rule 183 to reflect the dictates of the Supreme Court's opinion. The current rule provides "substantially the same procedures as those set forth in former Rule 182." Tax Ct. Rule 183 note on Ballard, 125 S.Ct. 1270(2005)(as amended Sept. 20, 2005). Significantly, these procedures include service of the special trial judge report on the parties, an opportunity for objection to the recommendations, and a requirement that the final order or report reflect the presiding judge's action on the report. See id. Although these specific requirements were not in effect at the time of this lawsuit, they reflect the overall principles outlined by the Supreme Court, giving force to the phrase "due regard" by requiring more of the appointed judge than the bare assertion that he gave "due regard" to the special trial judge's findings.

Credibility determinations are entitled to great deference, and must not be disturbed unless manifestly unreasonable. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575, 105 S.Ct. 1504, 1512 (1985)("When findings are based on determinations regarding the credibility of witnesses, [Fed. R. Civ. P.]52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said")(citations omitted). As such, a reviewing court must be in the position to scrutinize whether or not such findings

10

have been given "due regard." Absent Judge Couvillion's original report, we had no basis for comparison and could only defer to Judge Dawson's statement that he adopted the report. We now know that Judge Couvillion's original report stands in direct opposition to Judge Dawson's ultimate decision, and that collaboration amongst Chief Judge Cohen, Judge Dawson, and Judge Couvillion resulted in considerable and fundamental modifications to the original report. Unexplained modification of Judge Couvillion's credibility determinations is unacceptable. If a reviewing judge departs from a special trial judge's findings of fact, such departure must be reflected and explained in the final order, and must be evident to the reviewing court by making the original recommendations available in the record on appeal. Any such departures must be fully explained and supported by the record.

The situation is analogous to the district court's treatment of a magistrate judge's findings of fact. A magistrate's initial findings are made available to the reviewing court and to the parties. See 28 U.S.C. § 636(b)(1)(c).[6] A district court must defer to a magistrate's findings unless the magistrate's understanding of facts is entirely unreasonable. See U.S. v. Ramirez-Chilel, 289 F.3d 744, 749 (11th

---

[6] The same holds true for special masters and bankruptcy judges. See Fed. R. Civ. P. 53(f)(special masters); Fed R. Bkrtcy. Proc. 9033(a)(bankruptcy judges). Furthermore, Fed. Rule App. Proc. 10(a) requires that the record on appeal include original papers filed in district court. The Administrative Procedure Act specifies that the record on appeal must contain, "[a]ll decisions, including initial, recommended, and tentative decisions." 5 U.S.C. §557(c).

Cir.2002). Moreover, a district court may not reject a magistrate's credibility determinations without rehearing the disputed testimony. See United States v. Cofield, 272 F.3d 1303, 1306. Only in "rare cases," where "an articulable basis for rejecting the magistrate's original resolution of credibility" is found in the transcript, and where that basis is "articulated by the district judge," may an exception be made to the general rule requiring rehearing. Id. (citations omitted)(internal quotations omitted). As such, a reviewing court must be able to determine whether, as a matter of law, the district court gave the appropriate level of deference to the fact finder. This cannot be determined if original fact findings and credibility determinations are withheld from the record on appeal. The need for transparency under the present circumstances is no less than that required between magistrate and district court judge. Judge Couvillion's original report was not included in the record on appeal. We now know, however, that the Tax Court departed from Judge Couvillion's original report and articulated no basis for this departure. The procedures employed by the Tax Court, purporting to adopt Judge Couvillion's opinion when in reality changing it, merely emphasize the need for such transparency, and run contrary to Rule 183 both in principle and in application.

The defendant taxpayers objected to the concealment of Special Trail Judge Couvillion's original report, and to its exclusion from the record on appeal. In

compliance with the Supreme Court, we conclude that the original report of Special

Tax Judge Couvillion cannot be excluded from the record on appeal because such

concealment "impedes fully informed appellate review of the Tax Court's decision"

by "obscuring the Tax Court Judge's mode of reviewing that report." <u>Ballard</u>, 125

S.Ct. at 1283. It is absolutely essential that Judge Couvillion's original report be

reinstated and given the impact and deference required by law because all primary

witnesses in this case are now deceased, thus foreclosing the opportunity for a retrial.

## IV. Conclusion

Based on the recently disclosed history of this case and in light of the Supreme

Court's decision, it has become evident that the procedures employed by the Tax

Court do not comport with <u>Tax Court Rule 183</u> as it stood at the time of our original

opinion, nor do they with <u>Rule 183</u> as it stands now. Altering the original credibility

determinations and findings of Judge Couvillion without explanation was not only

contrary to the requirements of the law but also misleading. It is obvious now that the

withholding of Special Trial Judge Couvillion's original report did, in fact, impede

the process of appellate review. We therefore vacate the Tax Court's decision and

remand with instructions to: (1) Strike the "collaborative report" that formed the basis

of the Tax Court's ultimate decision; (2) Reinstate Judge Couvillion's original report;

(3) Refer this case to a regular Tax Court Judge who had no involvement in the

preparation of the aforementioned "collaborative report" and who shall give "due regard" to the credibility determinations of Judge Couvillion, presuming that his fact findings are correct unless manifestly unreasonable;[7] and (4) Adhere strictly hereafter to the amended Tax Court Rules in finalizing Tax Court opinions.

**VACATED** and **REMANDED** to the Tax Court for proceedings consistent with this opinion. All pending motions are denied as moot.

---

[7] Former Chief Judge Cohen, Judge Dawson, and Judge Couvillion are not to be involved in this new review.