# BALLARD ET UX. *v.* COMMISSIONER OF INTERNAL REVENUE

No. 03–184.   Argued December 7, 2004—Decided March 7, 2005*

*Together with No. 03–1034, *Estate of Kanter, Deceased, et al.* v. *Commissioner of Internal Revenue,* on certiorari to the United States Court of Appeals for the Seventh Circuit.

42

GINSBURG, J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, SCALIA, KENNEDY, SOUTER, and BREYER, JJ., joined. KENNEDY, J., filed a concurring opinion, in which SCALIA, J., joined, *post*, p. 65. REHNQUIST, C. J., filed a dissenting opinion, in which THOMAS, J., joined, *post*, p. 68.

*Stephen M. Shapiro* argued the cause for petitioners in both cases. On the briefs in No. 03–184 were *Vester T. Hughes, Jr., Robert E. Davis, David J. Schenck, Christopher D. Kratovil, Steven S. Brown, Royal B. Martin,* and *William G. Sullivan.* With *Mr. Shapiro* on the briefs in No. 03–1034 were *Richard H. Pildes, Peter J. Rubin, N. Jerold Cohen, Teresa Wynn Roseborough, Philip Allen Lacovara,* and *Randall G. Dick.*

*Deputy Solicitor General Hungar* argued the cause for respondent in both cases. With him on the brief were *Acting Solicitor General Clement, Assistant Attorney General O'Connor, Deputy Assistant Attorney General Morrison, Traci L. Lovitt, Kenneth L. Greene,* and *Steven W. Parks.*†

JUSTICE GINSBURG delivered the opinion of the Court.

These cases concern the Tax Court's employment of special trial judges, auxiliary officers appointed by the Chief Judge of the Tax Court to assist in the work of the court. See 26 U. S. C. § 7443A(a). Unlike Tax Court judges, who are appointed by the President for 15-year terms, see § 7443(b), (e), special trial judges have no fixed term of office, § 7443A(a). Any case before the Tax Court may be assigned to a special trial judge for hearing. Ultimate decision in cases involving tax deficiencies that exceed $50,000, however, is reserved for the Tax Court. § 7443A(c).

Tax Court Rule 183 governs the two-tiered proceedings in which a special trial judge hears the case, but the Tax Court itself renders the final decision. The Rule directs that, after

---

†Briefs of *amici curiae* urging reversal in both cases were filed for the National Federation of Independent Business Legal Foundation by *H. Christopher Bartolomucci;* and for Senator David Pryor et al. by *Roderick M. Hills, Jr.*

*Scott L. Nelson, Alan B. Morrison,* and *Steven R. Shapiro* filed a brief for Public Citizen, Inc., et al. as *amici curiae* urging reversal in No. 03–1034.

*Leandra Lederman, pro se,* filed a brief as *amicus curiae.*

trial and submission of briefs, the special trial judge "shall submit a report, including findings of fact and opinion, to the Chief Judge, and the Chief Judge will assign the case to a Judge . . . of the Court." Tax Ct. Rule 183(b), 26 U. S. C. App., p. 1619. In acting on the report, the Tax Court judge to whom the case is assigned must give "[d]ue regard . . . to the circumstance that the [s]pecial [t]rial [j]udge had the opportunity to evaluate the credibility of the witnesses." Rule 183(c), *ibid.* Further, factfindings contained in the report "shall be presumed to be correct." *Ibid.* The final Tax Court decision "may adopt the [s]pecial [t]rial [j]udge's report or may modify it or may reject it in whole or in part." *Ibid.*

Until 1983, special trial judge reports, as submitted to the Chief Judge, were made public and were included in the record on appeal. A rule revision that year deleted the requirement that, upon submission of the special trial judge's report, "a copy . . . shall forthwith be served on each party." See Rule 183 note, 81 T. C. 1069–1070 (1984). Correspondingly, the revision deleted the prior provision giving parties an opportunity to set forth "exceptions" to the report. *Ibid.*[1] Coincident with those rule changes, the Tax Court significantly altered its practice in cases referred for trial, but not final decision, to special trial judges. Since the Jan-

---

[1] Unlike other judicial and administrative bodies, the Tax Court does not maintain a formal practice of publicly disclosing proposed amendments to its Rules. . See *Estate of Kanter* v. *Commissioner*, 337 F. 3d 833, 877–878, n. 2 (CA7 2003) (Cudahy, J., concurring in part and dissenting in part) (describing the Tax Court's lack of a "formal documented procedure" for amending its Rules as "oddly out of sync with prevailing practices in other areas of the law"). Although the Tax Court solicits comments on proposed rule changes from the American Bar Association's Section on Taxation, see ABA Members Suggest Modifications to Proposed Amendments of Tax Court Rules, 97 Tax Notes Today, p. 167–25 (Aug. 28, 1997), the court apparently does not publish its proposals to, or accept comments from, the general public.

uary 16, 1984 effective date of the rule revision, the post-trial report submitted to the Chief Judge, then transmitted to the Tax Court judge assigned to make the final decision, has been both withheld from the public and excluded from the record on appeal. Further, since that time, Tax Court judges have refrained from disclosing, in any case, whether the final decision in fact "modi[fies]" or "reject[s] [the special trial judge's initial report] in whole or in part." Cf. Rule 183(c), 26 U. S. C. App., p. 1619. Instead, the final decision invariably begins with a stock statement that the Tax Court judge "agrees with and adopts the opinion of the [s]pecial [t]rial [j]udge." See, e. g., *Investment Research Assoc., Ltd.* v. *Commissioner*, 78 TCM 951, 963 (1999), ¶ 99,407 RIA Memo TC, pp. 2562–2563. Whether and how the opinion thus adopted deviates from the special trial judge's original report is never made public.

Petitioners are taxpayers who were unsuccessful in the Tax Court and on appeal. They object to the concealment of the special trial judge's initial report and, in particular, exclusion of the report from the record on appeal. They urge that, under the Tax Court's current practice, the parties and the Court of Appeals lack essential information: One cannot tell whether, as Rule 183(c) requires, the final decision reflects "[d]ue regard" for the special trial judge's "opportunity to evaluate the credibility of [the] witnesses," and presumes the correctness of that judge's initial factfindings. We agree that no statute authorizes, and the current text of Rule 183 does not warrant, the concealment at issue. We so hold, mindful that it is routine in federal judicial and administrative decisionmaking both to disclose the initial report of a hearing officer, and to make that report part of the record available to an appellate forum. A departure of the bold character practiced by the Tax Court—the creation and attribution solely to the special trial judge of a superseding report composed in unrevealed collaboration with a regular

Tax Court judge—demands, at the very least, full and fair statement in the Tax Court's own Rules.[2]

## I

After repeated Internal Revenue Service audits spanning several years, taxpayers Claude Ballard, Burton W. Kanter, and Robert Lisle received multiple notices of deficiency from the Commissioner of Internal Revenue (Commissioner).[3] The Commissioner charged that during the 1970's and 1980's, Ballard and Lisle, real estate executives at the Prudential Life Insurance Company of America (Prudential), had an arrangement with Kanter, a tax lawyer and business entrepreneur, under which people seeking to do business with Prudential made payments to corporations controlled by

---

[2] The dissent observes that the parties did not discretely refer to the ground on which our decision rests. See *post*, at 68, n. 1 (opinion of REHNQUIST, C. J.); Brief for Petitioner Kanter (i) (asking whether Tax Court Rule 183 requires Tax Court judges to uphold findings made by special trial judges unless "clearly erroneous" (internal quotation marks omitted)). The meaning of Rule 183, however, is a question anterior to all other questions the parties raised, and the requirements of the Rule were indeed aired in the taxpayers' briefs. See *id.*, at 34–39; Reply Brief for Petitioner Ballard 2–3, 8–10; Reply Brief for Petitioner Kanter 3–8. Under the circumstances, we think it evident that our disposition is in entire accord with "our own Rule." Compare *post*, at 68, n. 1 (opinion of REHNQUIST, C. J.), with this Court's Rule 14.1(a) ("The statement of any question presented is deemed to comprise every subsidiary question fairly included therein."); and *R. A. V.* v. *St. Paul*, 505 U. S. 377, 381, n. 3 (1992). See generally R. Stern, E. Gressman, S. Shapiro, & K. Geller, Supreme Court Practice 414 (8th ed. 2002) (observing that "[q]uestions not explicitly mentioned but essential to analysis of the decisions below or to the correct disposition of the other issues have been treated as subsidiary issues fairly comprised by the question presented" (internal quotation marks omitted)).

[3] Petitioners here are Ballard; his wife, who was included in the notices of deficiency because she filed joint returns with her husband; Kanter's estate; Kanter's executor; and Kanter's wife. Brief for Petitioner Ballard (ii); Brief for Petitioner Kanter (ii). Lisle's estate is not a petitioner before this Court. See *infra*, at 52, and n. 8. For convenience, this opinion will refer to the petitioners simply as "Ballard" and "Kanter."

Kanter. Those payments, the Commissioner alleged, were then distributed to Kanter, Ballard, and Lisle, or to entities they controlled. Ballard, Kanter, and Lisle did not report the payments on their individual tax returns. See *Investment Research Assoc.*, 78 TCM, at 1058, ¶ 99,407 RIA Memo TC, pp. 2672–2673; *Ballard* v. *Commissioner*, 321 F. 3d 1037, 1038–1039 (CA11 2003); Brief for Petitioner Ballard 3–4; Brief for Petitioner Kanter 11. After the initial deficiency notices, the Commissioner, in 1994, additionally charged that the taxpayers' actions were fraudulent. See *Investment Research Assoc.*, 78 TCM, at 966, ¶ 99,407 RIA Memo TC, p. 2693. As to each asserted deficiency, Ballard, Kanter, and Lisle filed petitions for redetermination in the Tax Court. See *Ballard*, 321 F. 3d, at 1040.

The Tax Court is composed of 19 regular judges appointed by the President for 15-year terms, and several special trial judges appointed, from time to time, by the Tax Court's Chief Judge. See 26 U. S. C. §§ 7443(a)–(b), (e), 7443A(a).[4] The statute governing the appointment and competence of special trial judges, § 7443A,[5] prescribes no term of office for them, but sets their salaries at 90% of the salary paid to regular judges of the Tax Court, see § 7443A(d). The Tax Court may authorize special trial judges to hear and render final decisions in declaratory judgment proceedings, "small tax cases," and levy and lien proceedings. See § 7443A(b)(1)–(4), (c); Tax Ct. Rule 182, 26 U. S. C. App., p. 1619; Brief for Respondent 3. If the amount of the taxes at issue exceeds $50,000, a special trial judge may be as-

---

[4] Special trial judges were called "commissioners" when the office was created in 1943. The Tax Court changed the title to "special trial judge" in 1979. See Tax Ct. Rule 182 note, 71 T. C. 1215 (1979); Brief for Petitioner Kanter 6.

[5] Section 7443A was amended and renumbered in 1998, some years after the 1994 trial in these cases. See Pub. L. 105–206, § 3401(c), 112 Stat. 749. The alterations did not change the statute's text in any relevant respect. This opinion refers to the current version of the statute.

signed to preside over the trial and issue a report containing recommended factfindings and conclusions as to the taxpayers' liability, but decisional authority is reserved for the Tax Court. See § 7443A(b)(5), (c); *Freytag* v. *Commissioner*, 501 U. S. 868, 881–882 (1991) (noting that special trial judges "take testimony, conduct trials, [and] rule on the admissibility of evidence," but "lack authority to enter a final decision" in certain cases). Tax Court Rule 183 governs the Tax Court's review of the special trial judge's findings and opinion. See *supra*, at 44–45.

After Ballard, Kanter, and Lisle sought review in the Tax Court, the Chief Judge assigned the consolidated case to Special Trial Judge D. Irvin Couvillion for trial. Judge Couvillion presided over a five-week trial during the summer of 1994, and the parties' briefing was completed in May 1995. App. 7; see also *Ballard*, 321 F. 3d, at 1040. The post-trial proceedings in the case are not fully memorialized in either the Tax Court's docket records or its published orders, but certain salient events can be traced. On or before September 2, 1998, Judge Couvillion submitted to the Chief Judge a report containing his findings of fact and opinion, "as required by [Tax Court] Rule 183(b)." Order of Dec. 15, 1999, in No. 43966–85 etc. (TC), App. to Kanter Pet. for Cert. 113a–114a. On September 2, 1998, the Chief Judge assigned the case to Tax Court Judge Howard A. Dawson, Jr., "for review [of the special trial judge's report] and, if approved, for adoption." *Id.*, at 114a.[6] Fifteen months later, on December 15, 1999, the Chief Judge "reassigned" the case "from [Judge] Couvillion to [Judge] Dawson." *Id.*,

---

[6] Judge Dawson is a retired Tax Court judge who served two terms, from 1962 until 1985, as a regular member of the court. He was recalled to judicial duties by the Chief Judge of the Tax Court in 1990. See 26 U. S. C. § 7447(c). Recalled judges serve "for any period . . . specified by the chief judge." *Ibid.* Their salary, unlike that of special trial judges, see *supra*, at 48, is equal to that of Tax Court judges.

at 113a. That same day, Judge Dawson issued the decision of the Tax Court.

Judge Dawson found that Ballard, Kanter, and Lisle had acted with intent to deceive the Commissioner, and held them liable for underpaid taxes and substantial fraud penalties. See, *e. g., Investment Research Assoc.*, 78 TCM, at 1071, 1075, 1085, ¶ 99,407 RIA Memo TC, pp. 2689, 2692–2693, 2705–2706. In so ruling, Judge Dawson purported to adopt the findings contained in the report submitted by Judge Couvillion: "The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below." *Id.,* at 963, ¶ 99,407 RIA Memo TC, pp. 2562–2563. Judge Dawson's decision consists in its entirety of a document, over 600 pages in length, labeled "Opinion of the Special Trial Judge." *Ibid.*

The taxpayers came to believe that the document titled "Opinion of the Special Trial Judge" was *not* in fact a reproduction of Judge Couvillion's Rule 183(b) report. A declaration, dated August 21, 2000, submitted by Kanter's attorney, Randall G. Dick, accounts for this belief. Dick attested to conversations with two Tax Court judges regarding the Tax Court's decision. According to the declaration, the judges told Dick that in the Rule 183(b) report submitted to the Chief Judge, Judge Couvillion had concluded that Ballard, Kanter, and Lisle did not owe taxes with respect to payments made by certain individuals seeking to do business with Prudential, and that the fraud penalty was not applicable. App. to Ballard Pet. for Cert. 308a–309a, ¶ 4. Attorney Dick's declaration further stated:

"In my conversations with the judges of the Tax Court, I was told the following: That substantial sections of the opinion were not written by Judge Couvillion, and that those sections containing findings related to the credibility of witnesses and findings related to fraud were wholly contrary to the findings made by Judge Couvillion in his report. The changes to Judge Couvillion's

findings relating to credibility and fraud were made by Judge Dawson." *Id.*, at 309a, ¶ 5.

Concerned that Judge Dawson had modified or rejected special trial judge findings tending in their favor, see Tax Ct. Rule 183(c), the taxpayers filed three successive motions in the Tax Court; each motion sought access to the report Special Trial Judge Couvillion had submitted to the Chief Judge or, in the alternative, permission to place the special trial judge's report under seal in the record on appeal. See Order of Aug. 30, 2000, App. to Kanter Pet. for Cert. 99a– 101a; Motion of May 25, 2000, *id.*, at 105a. The Tax Court denied the motions. See Order of Aug. 30, 2000, *id.*, at 100a–101a, 103a. In response to the taxpayers' third motion, filed in August 2000, the Tax Court elaborated: "Judge Dawson states and Special Trial Judge Couvillion agrees, that, after a meticulous and time-consuming review of the complex record in these cases, Judge Dawson adopted the findings of fact and opinion of Special Trial Judge Couvillion, . . . Judge Dawson presumed the findings of fact recommended by Special Trial Judge Couvillion were correct, and . . . Judge Dawson gave due regard" to Judge Couvillion's credibility findings. *Id.*, at 102a. To the extent that the taxpayers sought "any preliminary drafts" of the special trial judge's report, the Tax Court added, such documents are "not subject to production because they relate to the internal deliberative processes of the Court." *Id.*, at 101a (quoting Order of Apr. 26, 2000, *id.*, at 109a).

Appeals from Tax Court decisions are taken to the court of appeals for the circuit in which the taxpayer resides. 26 U. S. C. § 7482(b)(1)(A). Ballard therefore appealed to the Eleventh Circuit, Kanter to the Seventh Circuit, and Lisle to the Fifth Circuit. All three Courts of Appeals accepted the Commissioner's argument that the special trial judge's signature on the Tax Court's final decision rendered that decision in fact Special Trial Judge Couvillion's report. *Estate of Kanter* v. *Commissioner*, 337 F. 3d 833, 840–841 (CA7 2003);

*Ballard,* 321 F. 3d, at 1042; accord *Estate of Lisle* v. *Commissioner,* 341 F. 3d 364, 384 (CA5 2003) (adopting the reasoning of the Seventh and Eleventh Circuits without elaboration). The appeals courts further agreed with the Commissioner that the special trial judge's original report, submitted to the Chief Judge pursuant to Rule 183(b), qualified as a confidential document, shielded as part of the Tax Court's internal deliberative process. See *Kanter,* 337 F. 3d, at 841–844; *Ballard,* 321 F. 3d, at 1042–1043; accord *Estate of Lisle,* 341 F. 3d, at 384.

Having rejected the taxpayers' objection to the absence of the special trial judge's Rule 183(b) report from the record on appeal, the Seventh and Eleventh Circuits proceeded to the merits of the Tax Court's final decision and affirmed that decision in principal part. See *Kanter,* 337 F. 3d, at 873–874; *Ballard,* 321 F. 3d, at 1044.[7] The Fifth Circuit's judgment, which is not before this Court, reversed the fraud penalties assessed against Lisle for evidentiary insufficiency but upheld the Tax Court's determination of tax deficiencies for certain years. See *Estate of Lisle,* 341 F. 3d, at 384–385.[8] Seventh Circuit Judge Cudahy dissented on the issue of the special trial judge's initial report, maintaining that intelligent review of the Tax Court's decision required inclusion of that report in the record on appeal. See *Kanter,* 337 F. 3d, at 874, 884–888.

We granted certiorari, 541 U. S. 1009 (2004), to resolve the question whether the Tax Court may exclude from the record on appeal Rule 183(b) reports submitted by special trial judges. We now reverse the decisions of the Seventh and Eleventh Circuits upholding the exclusion.

---

[7] Finding one of Kanter's deductions legitimate, the Seventh Circuit reversed the Tax Court's ruling on that issue. See *Kanter,* 337 F. 3d, at 854–857.

[8] Lisle's estate did not seek this Court's review of the adverse portions of the Fifth Circuit's decision.

## II

Central to these cases is Tax Court Rule 183, which delineates the procedural framework and substantive standards governing Tax Court review of special trial judge findings. Rule 183(b), captioned "Special Trial Judge's Report," provides that after the trial of a case and submission of the parties' briefs, "the Special Trial Judge shall submit a report, including findings of fact and opinion, to the Chief Judge, and the Chief Judge will assign the case to a Judge . . . of the Court." 26 U. S. C. App., p. 1619.[9] Rule 183(c), directed to the Tax Court judge to whom the case is assigned for final decision, reads:

> "Action on the Report: The Judge to whom . . . the case is assigned may adopt the Special Trial Judge's report or may modify it or may reject it in whole or in part, or may direct the filing of additional briefs or may receive further evidence or may direct oral argument, or may recommit the report with instructions. Due regard shall be given to the circumstance that the Special Trial Judge had the opportunity to evaluate the credibility of witnesses, and the findings of fact recommended by the Special Trial Judge shall be presumed to be correct."

The Tax Court judge assigned to take action on the special trial judge's report in these cases invoked none of the means Rule 183(c) provides to supplement the record. He did not "direct the filing of additional briefs[,] receive further evidence or . . . direct oral argument." See *ibid.* Nor does the record show, or the Commissioner contend, see Brief for Respondent 14–15, that the Tax Court judge "recommit[ed]

---

[9] Rule 183 has been amended since these cases were before the Tax Court, but the substantive provisions of the Rule have not been altered in any relevant respect. Compare Tax Ct. Rule 183, 26 U. S. C. App., p. 1483 (1994 ed.), with Tax Ct. Rule 183 (interim amendment), 26 U. S. C. App., p. 1670 (2000 ed.). Citations in this opinion are to the version of the Rule reprinted in the 2000 edition of the United States Code.

the [special trial judge's] report with instructions." Rule 183(c).[10] From all that appears on the record, then, Judge Dawson's review of the factfindings contained in Judge Couvillion's report rested on the Rule 183(b) report itself, the trial transcript, and the other documents on file. Rule 183(c) guides the appraisal of those filed materials.

Rule 183(c)'s origin confirms the clear understanding, from the start, that deference is due to factfindings made by the trial judge. Commenting in 1973 on then newly adopted Rule 182(d), the precursor to Rule 183(c), the Tax Court observed that the Rule was modeled on Rule 147(b) of the former Court of Claims. Tax Ct. Rule 182 note, 60 T. C. 1150 (Tax Court review procedures were to be "comparable" to those used in the Court of Claims). Rule 182(d)'s "[d]ue

---

[10] The record does contain an order stating in its entirety:

"For cause, it is ORDERED: That these cases are reassigned from Special Trial Judge D. Irvin Couvillion to Judge Howard A. Dawson, Jr., for disposition.

"After the Special Trial Judge submitted a report, as required by Rule 183(b), Tax Court Rules of Practice and Procedure, these cases were referred to Judge Dawson on September 2, 1998, for review and, if approved, for adoption.

"Dated: Washington, D. C. December 15, 1999." App. to Kanter Pet. for Cert. 113a–114a.

One might speculate, from the reference to a "reassign[ment]," that at some point between September 1998 and December 1999, Judge Dawson "recommitted" the report to Judge Couvillion, who subsequently submitted a revised report to the Chief Judge who, in turn, referred that report to Judge Dawson. The Commissioner does not urge such an interpretation of the December 15, 1999 order, however, and it is, in any event, implausible. The Tax Court's docket reveals no action taken between the initial assignment and the enigmatic reassignment. Had Judge Dawson turned back the report after first receiving it, an order recommitting the case to Judge Couvillion "with instructions," Rule 183(c), should have memorialized that action. Moreover, Judge Dawson rendered the final decision of the Tax Court on the same day the case was "reassigned" to him. Had he faced a recast Rule 183(b) report, it is doubtful that he could have absorbed and acted upon it so swiftly.

regard" and "presumed to be correct" formulations were taken directly from that earlier Rule,[11] which the Court of Claims interpreted to require respectful attention to the trial judge's findings of fact. See *Hebah* v. *United States*, 456 F. 2d 696, 698 (Ct. Cl. 1972) *(per curiam)* (challenger must make "a strong affirmative showing" to overcome the presumption of correctness that attaches to trial judge findings). The Tax Court's acknowledgment of Court of Claims Rule 147(b) as the model for its own Rule, indeed the Tax Court's adoption of nearly identical language, lead to the conclusion the Tax Court itself expressed: Under the Rule formerly designated Rule 182(b), now designated 183(c), special trial judge findings carry "special weight insofar as those findings are determined by the opportunity to hear and observe the witnesses." Tax Ct. Rule 182 note, 60 T. C. 1150 (1973); see *Stone* v. *Commissioner*, 865 F. 2d 342, 345 (CADC 1989).

Under Rule 182 as it was formulated in 1973, the Tax Court's review of the special trial judge's report was a transparent process. Rule 182(b) provided for service of copies of the special trial judge's report on the parties and Rule 182(c) allowed parties to file exceptions to the report. 60 T. C., at 1149. The process resembled a district court's review of a magistrate judge's report and recommendation: The regular Tax Court judge reviewed the special trial judge's report independently, on the basis of the record and the parties' objections to the report. See Rule 182(c), (d), *id.*, at 1149–1150. In years before 1984, the Tax Court ac-

---

[11] Court of Claims Rule 147(b) provided:

"The court may adopt the [trial judge's] report, including conclusions of fact and law, or may modify it, or reject it in whole or in part, or direct the [trial judge] to receive further evidence, or refer the case back to him with instructions. Due regard shall be given to the circumstance that the [trial judge] had the opportunity to evaluate the credibility of the witnesses; and the findings of fact made by the [trial judge] shall be presumed to be correct." 28 U. S. C. App., p. 7903 (1970 ed.).

knowledged instances in which it "disagree[d] with the Special Trial Judge," see *Rosenbaum* v. *Commissioner*, 45 TCM 825, 827 (1983), ¶ 83,113 P–H Memo TC, p. 373, or modified the special trial judge's findings, see *Taylor* v. *Commissioner*, 41 TCM 539 (1980), ¶ 80,552 P–H Memo TC, p. 2344 (adopting special trial judge's report with "some modifications"). Parties were therefore equipped to argue to an appellate court that the Tax Court failed to give the special trial judge's findings the measure of respect required by Rule 182(d)'s "[d]ue regard" and "presumed to be correct" formulations.

In 1983, the Tax Court amended the Rule, which it simultaneously renumbered as Rule 183. The 1983 change eliminated the provision, formerly in Rule 182(b), for service of copies of the special trial judge's report on the parties; it also eliminated the procedure, formerly in Rule 182(c), permitting the parties to file exceptions to the report. See Rule 183 note, 81 T. C., at 1069–1070. The Tax Court left intact, however, the Rule's call for "[d]ue regard" to the special trial judge's credibility determinations and the instruction that "the findings of fact recommended by the Special Trial Judge shall be presumed to be correct." Rule 183(c), *id.*, at 1069. Further, the 1983 amendments did not purport to change the character of the action the Tax Court judge could take on the special trial judge's report; as before, the Tax Court could "adopt" the report, "modify it," or "reject it in whole or in part." *Ibid.* In practice, however, the Tax Court stopped acknowledging instances in which it rejected or modified special trial judge findings. Judge Cudahy, in dissent in the Seventh Circuit, commented on the "extraordinary unanimity" that has prevailed since the 1983 amendments: "Never, in any instance since the adoption of the current Rule 183 that I could find," Judge Cudahy reported, "has a Tax Court judge *not* agreed with and adopted the [special trial judge's] opinion." *Kanter*, 337 F. 3d, at 876; cf. Tr. of Oral Arg. 44 (Counsel for the Commissioner, in re-

sponse to the Court's question, stated: "We're not aware of any cases in which the Tax Court judge has rejected the [special trial judge's] findings . . . .").

It appears from these cases and from the Commissioner's representations to this Court that the Tax Court, following the 1983 amendments to Rule 183, inaugurated a novel practice regarding the report the special trial judge submits post-trial to the Chief Judge. No longer does the Tax Court judge assigned to the case alone review the report and issue a decision adopting it, modifying it, or rejecting it in whole or in part. Instead, the Tax Court judge treats the special trial judge's report essentially as an in-house draft to be worked over collaboratively by the regular judge and the special trial judge. See *id.*, at 38 (Counsel for the Commissioner acknowledged that the special trial judge and regular Tax Court judge engage in "a collegial deliberative process," and that such a process, "involving more than one person . . . in the decision-making," is "unusual"); see also *id.*, at 29–30 (referring to "the deliberative process" occurring after the special trial judge submits his report to the Chief Judge); *Kanter*, 337 F. 3d, at 876–877 (Cudahy, J., dissenting). Nowhere in the Tax Court's Rules is this joint enterprise described.[12]

When the collaborative process is complete, the Tax Court judge issues a decision in all cases "agree[ing] with and adopt[ing] the opinion of the Special Trial Judge." See *supra*, at 46. The extent to which that "opinion" modifies or rejects the special trial judge's Rule 183(b) findings and opinion, and is in significant part prompted or written by the regular Tax Court judge, is undisclosed. Cf. Order of Apr. 26, 2000, App. to Kanter Pet. for Cert. 108a (denying motion for access to original special trial judge report prepared

---

[12] Nor does any other Tax Court publication, such as an interpretive guide or policy statement, suggest that the 1983 amendments to Rule 183 altered the internal process by which the Tax Court judge reviews the special trial judge's findings.

under Rule 183(b), Tax Court Judge Dawson stated: "Special Trial Judge Couvillion submitted his report . . . pursuant to Rule 183(b), which ultimately became the Memorandum Findings of Fact and Opinion . . . filed on December 15, 1999.").[13]

Judge Cudahy appears accurately to have described the process operative in the Tax Court:

> "[T]here are two '[special trial judge's] reports' in many . . . Tax Court cases—the original 'report' filed under Rule 183 with the Chief Judge of the Tax Court, which is solely the work product of the [special trial judge] (and which represented the [special trial judge's] views at the end of trial) and the later 'opinion' of the [special trial judge], which is a collaborative effort, but which the Tax Court then 'agrees with and adopts' as the opinion of the Tax Court." *Kanter*, 337 F. 3d, at 876.

Notably, however, the Tax Court Rules refer only once to a special trial judge "opinion": "[T]he Special Trial Judge shall submit a report, including findings of fact and *opinion*, to the Chief Judge." Tax Ct. Rule 183(b), 26 U. S. C. App., p. 1619 (emphasis added). That opinion, included in a report completed and submitted *before* a regular Tax Court judge is assigned to the case, is the sole opinion properly ascribed to the special trial judge under the current Rules. Correspondingly, it is the Rule 183(b) report, not some subsequently composed collaborative report, that Rule 183(c), tellingly captioned "Action on the Report," instructs the Tax Court judge to review and adopt, modify, or reject. See Rule 183(c) (the Tax Court judge "may adopt the Special

---

[13] The Tax Court's post-1983 process for reviewing special trial judge reports appears not to have been comprehended, even by *cognoscenti*, prior to the airing it has received in these cases. See Cahill, Tax Judges Decide Cases They Do Not Hear, 37 ABA J. E-Report 3 (Sept. 27, 2002) (quoting tax attorney Gerald Kafka's statement that "[w]hen this case surfaced, a lot of people scratched their heads" (internal quotation marks omitted)).

Trial Judge's report").[14]   In the review process contemplated by Rule 183(c), the Tax Court judge must accord deference to the special trial judge's findings.  *Ibid.*  One would be hard put to explain, however, how a final decisionmaker, here the Tax Court judge, would give "[d]ue regard" to, and "presum[e] to be correct," an opinion the judge himself collaborated in producing.

However efficient the Tax Court's current practice may be, we find no warrant for it in the Rules the Tax Court publishes.   The Tax Court, like all other decisionmaking tribunals, is obliged to follow its own Rules.   See *Service* v. *Dulles,* 354 U. S. 363, 388 (1957) (Secretary of State "could not, so long as the Regulations remained unchanged, proceed without regard to them"); see also *Vitarelli* v. *Seaton,* 359 U. S. 535, 540 (1959) (Secretary bound by regulations he promulgated "even though without such regulations" he could have taken the challenged action); *id.,* at 546–547 (Frankfurter, J., concurring in part and dissenting in part) (observing that an agency, all Members of the Court agreed, and "rightly so," "must be rigorously held to the standards by which it professes its action to be judged").   Although the Tax Court is not without leeway in interpreting its own Rules, it is unreasonable to read into Rule 183 an unprovided-for collaborative process, and to interpret the formulations "[d]ue regard" and "presumed to be correct" to convey something other than what those same words meant prior to the 1983 rule changes.   See *supra,* at 54–56.

The Tax Court's practice of not disclosing the special trial judge's original report, and of obscuring the Tax Court judge's mode of reviewing that report, impedes fully in-

---

[14] The Tax Court, we are confident, would not woodenly apply its Rules to prevent a special trial judge from correcting a clerical error.   But see *post,* at 71, n. 6 (REHNQUIST, C. J., dissenting).   Moreover, if the special trial judge, on rereading his Rule 183(b) report postsubmission, detects an error of substance, the special trial judge might ask to have the report "recommit[ted]" for modification.   See Rule 183(c).

formed appellate review of the Tax Court's decision. In directing the Tax Court judge to give "[d]ue regard" to the special trial judge's credibility determinations and to "presum[e] . . . correct" the special trial judge's factfindings, Rule 183(c) recognizes a well-founded, commonly accepted understanding: The officer who hears witnesses and sifts through evidence in the first instance will have a comprehensive view of the case that cannot be conveyed full strength by a paper record.

Fraud cases, in particular, may involve critical credibility assessments, rendering the appraisals of the judge who presided at trial vital to the Tax Court's ultimate determinations. These cases are illustrative. The Tax Court's decision repeatedly draws outcome-influencing conclusions regarding the credibility of Ballard, Kanter, and several other witnesses. See, *e. g.*, *Investment Research Assoc.*, 78 TCM, at 1060, ¶ 99,407 RIA Memo TC, p. 2675 ("We find Kanter's testimony to be implausible."); *id.*, at 1083, ¶ 99,407 RIA Memo TC, p. 2703 ("[W]e find Ballard's testimony vague, evasive, and unreliable."); *id.*, at 1079, ¶ 99,407 RIA Memo TC, p. 2698 ("The testimony of Thomas Lisle, Melinda Ballard, Hart, and Albrecht is not credible."); *id.*, at 1140, ¶ 99,407 RIA Memo TC, p. 2776 ("[T]he witnesses presented on behalf of [Investment Research Associates] in this case were obviously biased, and their testimony was not credible."). Absent access to the special trial judge's Rule 183(b) report in this and similar cases, the appellate court will be at a loss to determine (1) whether the credibility and other findings made in that report were accorded "[d]ue regard" and were "presumed . . . correct" by the Tax Court judge, or (2) whether they were displaced without adherence to those standards. See *Kanter*, 337 F. 3d, at 886 (Cudahy, J., concurring in part and dissenting in part) ("I can think of no single item of more significance in evaluating a Tax Court's decision

on fraud than the unfiltered findings of the [special trial judge] who stood watch over the trial.").

The Commissioner urges, however, that the special trial judge's report is an internal draft, a mere "step" in a "confidential decisional process," and therefore properly withheld from a reviewing court. See Brief for Respondent 16–17 (courts should not "probe the mental processes" of decisional authorities (quoting *United States* v. *Morgan,* 313 U. S. 409, 422 (1941))); accord Order of Aug. 30, 2000, App. to Kanter Pet. for Cert. 101a. Our conclusion that Rule 183 does not authorize the Tax Court to treat the special trial judge's Rule 183(b) report as a draft subject to collaborative revision, see *supra,* at 59–60, disposes of this argument. The Commissioner may not rely on the Tax Court's arbitrary construction of its own rules to insulate special trial judge reports from disclosure. Cf. *Kanter,* 337 F. 3d, at 888 (Cudahy, J., concurring in part and dissenting in part) (access on appeal to the special trial judge's Rule 183(b) report should not be blocked by the Tax Court's "concealment of [its] revision process behind th[e] verbal formula" through which the Tax Court judge purports to "agre[e] with and adop[t]" the opinion of the special trial judge (internal quotation marks omitted)).

We are all the more resistant to the Tax Court's concealment of the only special trial judge report its Rules authorize given the generally prevailing practice regarding a tribunal's use of hearing officers. The initial findings or recommendations of magistrate judges, special masters, and bankruptcy judges are available to the appellate court authorized to review the operative decision of the district court. See 28 U. S. C. § 636(b)(1)(C) (magistrate judge's proposed findings must be filed with the court and mailed to the parties); Fed. Rule Civ. Proc. 53(f) (special masters); Fed. Rule Bkrtcy. Proc. 9033(a), (d) (bankruptcy judges); Fed. Rule App. Proc. 10(a) (record on appeal includes the original papers filed in

the district court). And the Administrative Procedure Act provides: "All decisions, including initial, recommended, and tentative decisions, are a part of the record" on appeal. 5 U. S. C. § 557(c); see also § 706 (the reviewing court shall evaluate the "whole record"). In comparison to the nearly universal practice of transparency in forums in which one official conducts the trial (and thus sees and hears the witnesses), and another official subsequently renders the final decision, the Tax Court's practice is anomalous. As one observer asked: "[I]f there are policy reasons that dictate transparency for everyone else, why do these reasons not apply to the Tax Court?" *Kanter*, 337 F. 3d, at 874 (Cudahy, J., concurring in part and dissenting in part); cf. *Mazza* v. *Cavicchia*, 15 N. J. 498, 519, 105 A. 2d 545, 557 (1954) ("We have not been able to find a single case in any state . . . justifying or attempting to justify the use of secret reports by a hearer to the head of an administrative agency.").[15]

The Commissioner asserts, however, that the Tax Court's practice of replacing the special trial judge's initial report with a "collaborative" report and refusing to disclose the initial report is neither "unique" nor "aberrational." Brief for Respondent 31. As a "direct *statutory* analog," *ibid.*, the Commissioner points to 26 U. S. C. § 7460(b), the provision

---

[15] It is curious that the Commissioner, always a party in Tax Court proceedings, argues strenuously in support of concealment of the special trial judge's report. As Judge Cudahy noted, the Tax Court's current practice allows it "very easily [to] reverse findings (credibility-related and otherwise) of [special trial judges] in a manner that is detrimental to the Commissioner as well as to" taxpayers. *Kanter*, 337 F. 3d, at 888 (concurring in part and dissenting in part). Inclusion of the report in the record on appeal would therefore seem "a procedural result that may benefit all parties." *Ibid.*; see Tr. of Oral Arg. 28 (Court inquired of counsel for the Commissioner: "[A]ren't there situations where it might be that the special trial judge would call a credibility question in the Government's favor and then the Government loses the case before the Tax Court judge and might like to know, before it goes to the court of appeals, how solid the credibility findings were?").

governing cases reviewed by the full Tax Court. Section 7460(b) instructs that when the full Tax Court reviews the decision of a single Tax Court judge, the initial one-judge decision "shall not be a part of the record." For several reasons, we reject the Commissioner's endeavor to equate proceedings that differ markedly.

First, as the Commissioner himself observes, omission of the single Tax Court judge's opinion from the record when full court review occurs has been the *statutory* rule "[f]rom the earliest days of the Tax Court's predecessor." Brief for Respondent 31 (citing Revenue Act of 1928, ch. 852, § 601, 45 Stat. 871). To this day, Congress has ordered no corresponding omission of special trial judge initial reports. Understandably so. Full Tax Court review is designed for the resolution of legal issues, not for review of findings of fact made by the judge who presided at trial. See L. Lederman & S. Mazza, Tax Controversies: Practice and Procedure 247 (2000). When the full Tax Court reviews, it is making a *de novo* determination of the legal issue presented. In contrast, findings of fact are key to special trial judge reports. See Tax Ct. Rule 183(c), 26 U. S. C. App., p. 1619. And those findings, under the Tax Court's Rules, are not subject to review *de novo*. Instead, they are measured against "[d]ue regard" and "presumed correct" standards. *Ibid.;* see *supra,* at 54–56.

Furthermore, the judges composing the full Tax Court and the individual Tax Court judge who made the decision under review are presidential appointees equal in rank. Each has an equal voice in the business of the Tax Court. To the extent that the individual judge disagrees with his colleagues, he is free to file a dissenting opinion repeating or borrowing from his initial decision. The special trial judge, serving at the pleasure of the Tax Court, lacks the independence enjoyed by regular Tax Court judges and the prerogative to publish dissenting views. See *Kanter,* 337 F. 3d, at

879–880 (Cudahy, J., concurring in part and dissenting in part).[16]

We note, finally, other arguments tendered by the taxpayers. Ballard and Kanter urge that the Due Process Clause requires disclosure of a trial judge's factfindings that have operative weight in a court's final decision. Brief for Petitioner Ballard 43–48; Brief for Petitioner Kanter 19–27. They also argue that, just as reports of special masters, magistrate judges, and bankruptcy judges form part of the record on appeal from a district court, so special trial judge reports must form part of the record on appeal from the Tax Court. They base this argument on the appellate review statute, 26 U. S. C. § 7482(a)(1), which instructs courts of appeals to review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." Brief for Petitioner Ballard 23–27 (internal quotation marks omitted); Brief for Petitioner Kanter 27, 34–35. In addition, they maintain that 26 U. S. C. §§ 7459(b) and 7461(a) require disclosure of all re-

---

[16] The Commissioner also notes that "numerous boards of contract appeals established by various agencies . . . do not require disclosure of initial reports prepared by presiding judges." Brief for Respondent 31–32. This analogy, too, is unimpressive. The contract dispute resolution panels to which the Commissioner points issue decisions after reviewing the initial report of a "presiding judge," designated to conduct an evidentiary hearing on behalf of the panel. Only the final decision is served on the parties and included in the record on appeal. *Ibid.* Unlike the situation of the special trial judge, however, the presiding judge holds a position equal in stature to that of the other panel members, and can file a dissent. See Reply Brief for Petitioner Kanter 15.

In discussing the text of Rule 183(b) and (c), and the Tax Court's current interpretation of that text, we surely do not intend to "impugn the integrity" of any Tax Court judge. Compare *post*, at 72 (opinion of REHNQUIST, C. J.), with *Kanter*, 337 F. 3d, at 880, n. 6 (Cudahy, J., concurring in part and dissenting in part) ("I am not suggesting that . . . the judges of the Tax Court . . . exert undue influence over [special trial judges]. The judicial independence of finders of fact, however, is a structural principle.").

ports generated in Tax Court proceedings, absent specific exemption. Brief for Petitioner Kanter 42–44. Because we hold that the Tax Court's Rules do not authorize the practice that the Tax Court now follows, we need not reach these arguments and express no opinion on them.

The idiosyncratic procedure the Commissioner describes and defends, although not the system of adjudication that Rule 183 currently creates, is one the Tax Court might someday adopt. Were the Tax Court to amend its Rules to express the changed character of the Tax Court judge's review of special trial judge reports, that change would, of course, be subject to appellate review for consistency with the relevant federal statutes and due process.

\* \* \*

For the reasons stated, the judgments of the Courts of Appeals for the Seventh and Eleventh Circuits are reversed, and the cases are remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, with whom JUSTICE SCALIA joins, concurring.

I concur in the opinion of the Court and note some points that may be considered in further proceedings, after the cases are remanded.

The Court is correct, in my view, in holding, first, that Tax Court Rule 183(c) mandates "that deference is due to factfindings made by the [special] trial judge," *ante*, at 54, and, second, that "it is the Rule 183(b) report . . . that Rule 183(c) . . . instructs the Tax Court judge to review and adopt, modify, or reject," *ante*, at 58.

The latter holding is supported by the most natural reading of the text of Rule 183. Accepting the Commissioner of Internal Revenue's contrary construction would require reading the word "report" in subdivisions (b) and (c) to mean

two different things. One additional indication in the text, moreover, is contrary to the Commissioner's position. Rule 183(c) authorizes the Tax Court judge to "recommit the report with instructions" to the special trial judge. Recommittal is generally a formal mechanism for initiating reconsideration or other formal action by the initial decisionmaker. See, e. g., Fed. Rule Civ. Proc. 72(b) ("The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions"); Fed. Rule Civ. Proc. 53(e)(2) (amended 2003) ("The court after hearing may adopt the [special master's] report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions"); cf. *Kansas* v. *Colorado*, 543 U. S. 86, 106 (2004) ("We accept the Special Master's recommendations and recommit the case to the Special Master for preparation of a decree consistent with this opinion"). Given that Tax Court Rule 183(c) provides a formal channel for the Tax Court judge to send a report back to the special trial judge for reconsideration, it is difficult to interpret the Rule to permit the informal process the Commissioner and the dissenting opinion defend here.

If the Tax Court deems it necessary to allow informal consultation and collaboration between the special trial judge and the Tax Court judge, it might design a rule for that process. If, on the other hand, it were to insist on more formality—with deference to the special trial judge's report and an obligation on the part of the Tax Court judge to describe the reasons for any substantial departures from the original findings—without requiring disclosure of the initial report, that would present a more problematic approach. It is not often that a rule requiring deference to the original factfinder exists, but the affected parties have no means of ensuring its enforcement.

That brings us to the questions of how these cases should be resolved on remand and how the current version of the

Rule should be interpreted in later cases. As to the former, this question is difficult because we do not know what happened in the Tax Court, a point that is important to underscore here. From a single affidavit, the majority extrapolates "a novel practice" whereby the Tax Court treats the initial special trial judge report as "an in-house draft to be worked over collaboratively by the regular judge and the special trial judge." *Ante*, at 57. I interpret the opinion as indicating that there might be such a practice, not that there is. The dissent, in contrast, appears to assume that any changes to the initial report were the result of reconsideration by the special trial judge or informal suggestions by the Tax Court judge. *Post*, at 70–71 (opinion of REHNQUIST, C. J.). Given the sparse record before us, I would not be so quick to make either assumption, particularly given that the Commissioner, charged with defending the Tax Court's decision, is no more privy to the inner workings of the Tax Court than we are.

Given the lingering uncertainty about whether the initial report was in fact altered or superseded, and the extent of any changes, there are factual questions that still must be resolved. If the initial report was not substantially altered, then there will have been no violation of the Rule. If, on the other hand, substantial revisions were made during a collaborative effort between the special trial judge and the Tax Court judge, the Tax Court might remedy that breach of the Rule in different ways. For instance, it could simply recommit the special trial judge's initial report and start over from there. More likely in these circumstances the remedy would be for the Tax Court to disclose the report that Judge Couvillion submitted on or before September 2, 1998.

This leads to the question of how Rule 183 should be interpreted in future cases. Rule 183's requirement of deference to the special trial judge surely implies that the parties to the litigation will have the means of knowing whether defer-

ence has been given and of mounting a challenge if it has not. Thus, a reasonable reading of the Rule requires the litigants and the courts of appeals to be able to evaluate any changes made to the findings of fact in the special trial judge's initial report. Including the original findings of fact in the record on appeal would make that possible.

All of these matters should be addressed in the first instance by the Courts of Appeals or by the Tax Court.

With these observations, I join the Court's opinion.

CHIEF JUSTICE REHNQUIST, with whom JUSTICE THOMAS joins, dissenting.

The Court reverses the judgments of the Courts of Appeals on the ground that Tax Court Rule 183 does not "authorize the practice that the Tax Court now follows." *Ante*, at 65.[1] I disagree. The Tax Court's compliance with its own Rules is a matter on which we should defer to the interpretation of that court. I therefore dissent.

The Tax Court interprets Rule 183 not to require the disclosure of the report submitted by the special trial judge

---

[1] It bespeaks the weakness of the taxpayers' arguments that the Court hinges its conclusion on an argument not even presented for our consideration. See Tr. of Oral Arg. 46 (Deputy Solicitor General Hungar noting that compliance with Rule 183 was not included within the questions presented). This Court does not consider claims that are not included within a petitioner's questions presented. See this Court's Rule 14.1(a); *Yee* v. *Escondido*, 503 U. S. 519, 535–538 (1992). Two of the taxpayers' three claims included in the four questions presented do not even mention Rule 183, instead claiming violations of due process, U. S. Const., Art. III, and governing federal statutes, 26 U. S. C. §§ 7459, 7461, and 7482. The only question presented that mentions Rule 183 is limited to asking whether Rule 183 requires the Tax Court to uphold findings of fact made by a special trial judge unless they are " 'clearly erroneous.' " Kanter Pet. for Cert. (i). Nor was this argument contained within the taxpayers' certiorari petitions or in their briefs submitted to the Courts of Appeals. See *Lopez* v. *Davis*, 531 U. S. 230, 244, n. 6 (2001). Only by failing to abide by our own Rules can the Court hold that the Tax Court failed to follow its Rules.

pursuant to paragraph (b) when the Tax Court judge adopts the special trial judge's report. In 1983, the Tax Court amended the Rule to eliminate the requirement that the special trial judge's submitted report be disclosed to the parties so that they could file exceptions before the Tax Court judge acted on the report. See Tax Ct. Rule 183 note, 81 T. C. 1069–1070 (1984). The 1983 amendment also changed the Rule to require that the special trial judge "submit" his report to the Chief Judge instead of "file" it, see Tax Ct. Rule 182(b), 60 T. C. 1150 (1973), thereby removing the initial report from the appellate record. See Fed. Rule App. Proc. 10(a)(1) (requiring the record on appeal contain "the original papers and exhibits *filed* in the district court" (emphasis added)).[2]

Consistent with these amendments, in an opinion signed by Judge Dawson, Special Trial Judge Couvillion, and Chief Judge Wells, the Tax Court held that disclosure of the Rule 183(b) report was not required in these cases because "[t]he only official Memorandum Findings of Fact and Opinion by the Court in these cases is T. C. Memo. 1999–407, filed on December 15, 1999, by Special Trial Judge Couvillion, reviewed and adopted by Judge Dawson, and reviewed and approved by former Chief Judge Cohen." Order of Aug. 30, 2000, in No. 43966–85 etc. (TC), App. to Kanter Pet. for Cert. 102a (hereinafter Order of Aug. 30, App. to Kanter Pet. for Cert.).[3] The Commissioner's brief makes clear that any

---

[2] By contrast, a "magistrate judge shall *file* his proposed findings and recommendations . . . with the court and a copy shall forthwith be mailed to all parties." 28 U. S. C. § 636(b)(1)(C) (emphasis added).

[3] See also Order of Aug. 30, App. to Kanter Pet. for Cert. 102a ("Judge Dawson states and Special Trial Judge Couvillion agrees, that, after a meticulous and time-consuming review of the complex record in these cases, Judge Dawson adopted the findings of fact and opinion of Special Trial Judge Couvillion, . . . Judge Dawson presumed the findings of fact recommended by Special Trial Judge Couvillion were correct, and . . . Judge Dawson gave due regard to the circumstance that Special Trial Judge Couvillion evaluated the credibility of witnesses"); Order of

changes that might exist between the special trial judge's initial opinion and his final opinion "would presumptively be the result of the [special trial judge's] legitimate reevaluation of the case." Brief for Respondent 11; accord, Brief for Appellee in No. 01–17249 (CA11), pp. 92–93; Brief for Appellee in No. 01–4316 etc. (CA7), pp. 122–123. Thus, consistent with its practice during the more than 20 years since Rule 183 was adopted in its current form, the Tax Court interprets Rule 183 as not requiring disclosure of "any preliminary drafts of reports or opinions." Order of Apr. 26, 2000, in No. 43966–85 etc. (TC), App. to Kanter Pet. for Cert. 109a.

Because this interpretation of Rule 183 is reasonable, it should be accepted. An agency's interpretation of its own rule or regulation is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles* v. *Seminole Rock & Sand Co.*, 325 U. S. 410, 414 (1945); see also *United States* v. *Cleveland Indians Baseball Co.*, 532 U. S. 200, 219–220 (2001); *Martin* v. *Occupational Safety and Health Review Comm'n*, 499 U. S. 144, 150–157 (1991).[4]

Notwithstanding the deference owed the Tax Court's legitimate interpretation of this Rule, the Court reads the Rule as requiring disclosure of the submitted report because paragraph (c) requires action on "the Special Trial Judge's *[initial]* report." See *ante*, at 58–59 (internal quotation marks omitted). To the contrary, Rule 183 mandates only that action be taken on "the Special Trial Judge's report." The Rule is silent on whether the special trial judge may correct

Apr. 26, 2000, in No. 43966–85 etc. (TC), *id.*, at 108a (noting that findings of fact and credibility assessments made by Special Trial Judge Couvillion were "reflected in the Memorandum Findings of Fact and Opinion (T. C. Memo. 1999–407)").

[4] Though the Tax Court is an Article I court and not an executive agency, *Freytag* v. *Commissioner*, 501 U. S. 868, 887–888 (1991), there is no reason why *Seminole Rock* deference does not extend to the Tax Court's interpretation of its own procedural rules. See *ante*, at 59 ("[T]he Tax Court is not without leeway in interpreting its own Rules").

technical or substantive errors in his original report after it is submitted to the Chief Judge and before the Tax Court judge takes action, either on his own initiative or by informal suggestion. Paragraph (c)'s use of the possessive "Special Trial Judge's report" is most naturally read to refer to the report authored and ascribed to by the special trial judge.[5] If the special trial judge changes his report, then the new version becomes "the Special Trial Judge's report." It is the special trial judge's signature that makes the report attributable to him. At the very least, it is not unreasonable or arbitrary for the Tax Court to construe the Rule as not requiring the disclosure of preliminary drafts or reports.[6] See *Estate of Kanter* v. *Commissioner*, 337 F. 3d 833, 841 (CA7 2003) ("[I]t is clear that the Tax Court's own rules do not require the report to be disclosed . . . ").

Nor does the Court's claim that judicial review is impeded withstand scrutiny. Because paragraph (c) can be read, as the Tax Court does, to permit the adoption of the report authored and signed by the special trial judge, the Courts of

---

[5] There can be no claim made that Tax Court Judge Dawson, and not Special Trial Judge Couvillion, wrote and controlled the content of the report. See, *e. g.,* Brief for Respondent 11 (noting that any changes to a special trial judge's report "would presumptively be the result of the STJ's legitimate reevaluation of the case"); Tr. of Oral Arg. 31 ("The only way it is possible for there to be a change is for the special trial judge himself to determine, in the exercise of his responsibility as a judicial officer, that he made a mistake"); Order of Aug. 30, App. to Kanter Pet. for Cert. 102a (indicating the adopted report was written "by Special Trial Judge Couvillion" and "adopted by Judge Dawson").

[6] Indeed, following the Court's interpretation that a Tax Court judge must act on the report submitted pursuant to paragraph (b), a Tax Court judge would be required to presume correct any factual findings that a special trial judge had disclaimed. For example, if the Special Trial Judge, after submitting a copy of his report to the Chief Judge, found a critical typographical error that the Tax Court judge might not recognize as such, then the Tax Court judge would be required, under the Court's view, to defer to the report as initially drafted instead of a corrected version of the report.

Appeals both determined that Tax Judge Dawson expressly adopted Special Trial Judge Couvillion's report. *Id.*, at 840–841; *Ballard* v. *Commissioner*, 321 F. 3d 1037, 1038–1039 (CA11 2003). There can be no doubt that in *adopting* Special Trial Judge Couvillion's findings of fact as well as his legal conclusions in their entirety, Tax Court Judge Dawson complied with whatever degree of deference is required by Rule 183(c).

Contrary to the Court's claimed distinctions, the statutory requirement that a Tax Court judge's initial opinion not be published when the Chief Judge directs that such opinion be reviewed by the full Tax Court is quite analogous to the Tax Court's interpretation of Rule 183. See 26 U. S. C. § 7460(b); *Estate of Varian* v. *Commissioner*, 396 F. 2d 753 (CA9 1968). A Tax Court judge whose decision is being reviewed may dissent from the full court's decision. Similarly, the special trial judge may choose not to change his initial findings of fact and opinion. In order to distinguish § 7460(b), the Court implies that Tax Court Judge Dawson exercised, or at least may have exercised, undue influence or improper control over Special Trial Judge Couvillion.[7] See *ante*, at 62. This Court generally does not assume abdication or impropriety, see *Freytag* v. *Commissioner*, 501 U. S. 868, 872, n. 2 (1991); *United States* v. *Morgan*, 313 U. S. 409, 422 (1941); *Fayerweather* v. *Ritch*, 195 U. S. 276, 306 (1904), and should not impugn the integrity of judges based on an unsubstantiated, nonspecific affidavit.[8]

---

[7] Any implication that Judge Dawson used his higher "rank" to exert improper influence or control is particularly inapt in these cases: Judge Dawson, as a retired Tax Court judge recalled into duty by the Chief Judge, has absolutely no authority over Special Trial Judge Couvillion as both serve at the will of the Tax Court's Chief Judge. See 26 U. S. C. §§ 7443A, 7447(c).

[8] The mere absence of any post-1983 decisions in which a Tax Court judge disagreed with a special trial judge does not support the Court's broad charges. A similar degree of agreement was evident *prior* to 1983 when the special trial judge's report was filed and served on the parties,

In sum, Rule 183 is silent on the question whether the report submitted to the Chief Judge pursuant to paragraph (b) must be the same report acted on by the Tax Court judge under paragraph (c). This Court should therefore defer to the Tax Court's interpretation of the Rule, as amended in 1983, allowing the disclosure of only the special trial judge's report that was adopted by the Tax Court judge.

As every Court of Appeals to consider the arguments has concluded, the taxpayer's statutory and constitutional arguments are not colorable. See *Estate of Lisle* v. *Commissioner*, 341 F. 3d 364, 384 (CA5 2003); *Estate of Kanter* v. *Commissioner, supra,* at 840–843; *Ballard* v. *Commissioner, supra,* at 1042–1043. I agree with those conclusions.[9]

For these reasons, I would affirm the Courts of Appeals.

---

who had the opportunity to file exceptions. From 1976 to 1983, for example, less than one percent (6 out of 680) of special trial judge reports were not adopted by the Tax Court judge, only 1 case reversed the special trial judge, and only 14 cases involved adoption with mostly minor modifications. See Brief for Respondent 17–18, and n. 4.

[9] With respect to the taxpayers' statutory arguments, 26 U. S. C. §§ 7459 and 7461 require only the disclosure of reports adopted by the Tax Court and not those reports that are not adopted. See §§ 7459 ("shall be the duty of the Tax Court . . . to include in *its* report upon any proceeding its findings of fact or opinion or memorandum opinion" (emphasis added)), 7461 ("[R]eports *of the Tax Court*" shall be public records (emphasis added)). Section 7482, which requires courts of appeals to review "decisions of the Tax Court" in the same manner as they review similar district court decisions, was passed to eliminate any special deference paid to Tax Court decisions, see *Dobson* v. *Commissioner,* 320 U. S. 489 (1943), does not portend to govern the record on appeal, cf. Fed. Rules App. Proc. 10 and 13, and addresses only the decisions of the Tax Court—not special trial judge reports.

As to their constitutional arguments, neither due process nor Article III requires disclosure. Disclosure of any report that has been abandoned by the special trial judge is in no way necessary to effective appellate review because the adoption of the special trial judge's report ensures that sufficient deference was given. Nor must all reports be disclosed in order for the Tax Court procedure itself to comport with due process. See *Morgan* v. *United States,* 298 U. S. 468, 478, 481–482 (1936).